```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JUDSON E. HAWTHORNE and       :    CIVIL ACTION
STACYE HAWTHORNE              :    NO. 05-5435
                             :
        Plaintiffs,          :
                             :
    v.                       :
                             :
AMERICAN MORTGAGE, INC, and   :
COUNTRYWIDE HOME LOANS, INC.  :
                             :
        Defendants.          :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          May 25, 2007

Plaintiffs in this case, Judson and Stayce Hawthorne
(collectively referred to as the "Hawthornes"), have brought an
action against American Mortgage, Inc. ("American Mortgage") and
Countrywide Home Loans, Inc. ("Countrywide").  American Mortgage
was the Hawthornes' mortgage broker.  Countrywide is a mortgage
lender with whom American Mortgage was working to finance the
Hawthornes' purchase of the home of their dreams.  The Hawthornes
allege that they lost the opportunity to purchase their dream
home after American Mortgage, who had promised the Hawthornes
that Countrywide would provide mortgage financing on the day of
closing failed to even show up at the scheduled closing.

Before the Court are cross motions for summary
judgment.  First, Countrywide has moved for summary judgment
(doc. no. 15) against the Hawthornes.  The Hawthornes' claims
against Countrywide are premised on their contention that

American Mortgage was acting as Countrywide's agent.  Because
there is no genuine issue of material fact that American Mortgage
was not acting as Countrywide's agent, the Court will grant
Countrywide's Motion for Summary Judgment.  The second motion is
the Hawthornes' Motion for Partial Summary Judgment (doc. no. 16)
against American Mortgage.  There still remain genuine issues of
material fact as to (1) whether American Mortgage breached its
agreement with the Hawthornes and (2) whether the Hawthornes
justifiably relied on American Mortgage's assurances that it was
prepared to provide financing to purchase the home.  The Court
will deny this motion.

**I.    BACKGROUND**

Judson and Stayce Hawthorne had their eyes on a
property located in Atglen, Pennsylvania for a long time.  When
the property went up for sale in July 2004, the Hawthornes placed
a bid on it, and their bid was accepted within the next two days.
To finance the purchase of the property, Mr. Hawthorne submitted
a mortgage application to American Mortgage, Inc.

On August 3, 2004, American Mortgage issued a letter to
Mr. Hawthorne certifying that he was "pre-approved for a non-
conforming residential mortgage not to exceed $1,200,000.00."
Based on this representation, Mr. Hawthorne executed an Agreement
of Sale (the "Agreement") with Douglas A. Bornstein and Rosemary

E. Pierce-Carsello (the "Seller") to purchase their dream home for $1,110,000.00.

On August 9, 2006, Mr. Hawthorne submitted a Universal Residential Loan Application to American Mortgage. Along with this application, he signed a Mortgage Loan Origination Agreement that described the "nature of relationship" between Mr. Hawthorne and American Mortgage: "We [American Mortgage] are acting as an <u>independent contractor</u> and not as your agent. . . . We have entered into separate <u>independent contractor</u> agreements with various lenders." Mortgage Loan Agreement at § 1 (emphasis added).

On August 29, 2004, American Mortgage wrote Mr. Hawthorne a letter stating: "Congratulations, your mortgage application on the above referenced property has been CONDITIONALLY APPROVED with COUNTRYWIDE FUNDING TERMS AND CONDITIONS" in the amount of $999,000.00.[1] One of the conditions was that "ALL CONDITIONS TO BE FINALIZED BY UNDERWRITING."

Thereafter, almost on a daily basis, Mr. Hawthorne contacted American Mortgage seeking assurances that it was prepared to attend and finance the closing scheduled for September 22, 2004. Mr. Hawthorne informed American Mortgage that if closing failed to occur on September 22, the Hawthornes

---

[1]   The Countrywide financing was made up of two mortgages: a first mortgage in the amount of $888,000.00 and a subordinate second mortgage in the amount of $111,000.00.

would lose the right to purchase the property.  American Mortgage provided the assurances that Mr. Hawthorne sought.  In a letter to the Sellers's real estate agent dated August 31, 2004, for example, American Mortgage's loan executive Bethann Whener wrote, "Mr. Hawthorne is a very cooperative borrower and an 'A+' applicant. I do not anticipate any problems with closing this deal on time (September 22, 2004)."

On Friday, September 10, 2004, American Mortgage accessed Countrywide's "eApproveTM" software to analyze the Hawthorne's loan application.  eApproveTM sent an automatically generated notice to American Mortgage that approved the request but stated that American Mortgage had to "submit an application in order to proceed."  The notice also provided:

> This approval is based on the accuracy of the data that you provided. Further action is subject to receipt of a loan application, further review and branch verification. The approval may be withdrawn if material differences are found between the electronic data and the loan package submitted to the branch.

On September 14, 2004, Countrywide received Mr. Hawthorne's completed mortgage application, leaving Countrywide with eight days to process the Hawthornes' loan application.

On September 20, 2004, Mr. Hawthorne contacted American Mortgage and informed them that Robert Irwin, another interested buyer of the property, had offered the Hawthornes $350,000.00 to walk away from their contract to purchase the property or to assign their rights under the contract to him.  The Hawthornes

-4-

claim that they rejected Mr. Irwin's offer, at least in part, because they were assured that their deal would close.

On the eve of closing, however, Countrywide determined that Mr. Hawthorne's application did not meet Countrywide's underwriting conditions.  Mr. Hawthorne had listed all of the income from his business, the Gracie Corporation, as his own, whereas recent tax returns indicated that he only owned 40% of Gracie Corporation.  Mrs. Hawthorne owned the remaining 60%. Moreover, even if Mrs. Hawthorne was added to the application, Countrywide's underwriting conditions would still not be met, because Mrs. Hawthorne had poor credit.  A Countrywide internal underwriting report dated September 21, 2004, 5:11 p.m., stated that the Hawthornes' ability to pay for the loan was "acceptable," but found the Hawthornes' credit as "QUESTIONABLE" ("CLUES Loan Analysis Report").  It concluded that the Loan application could not be "approved by CLUES and needs further review of an underwriter to ensure acceptable credit risk."

No one from Countrywide or American Mortgage informed the Hawthornes of their failure to obtain underwriting approval, and they proceeded to closing the following day.  After delaying for several hours, American Mortgage finally admitted to the Hawthornes that it could not provide financing for the scheduled closing and needed additional time.  The Hawthornes' Agreement of Sale lapsed, the Hawthornes lost the right to purchase their

dream home, and the Sellers ultimately sold it to Mr. Irwin for $150,000.00 above the price the Hawthornes agreed to pay.

The Hawthornes filed the instant action in the Chester County Court of Common Pleas and Countrywide removed the case to this Court (doc. no. 1).  The Hawthornes' complaint contains counts of: (1) breach of contract; (2) fraud; (3) violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); and (4) negligent misrepresentation.


## II.  COUNTRYWIDE'S MOTION FOR SUMMARY JUDGMENT

Countrywide has moved for summary judgment on all claims in the Hawthornes' complaint.  There is no contract between the Hawthornes and Countrywide.  The Hawthornes also admit that they had no communications with Countrywide during the loan application process.  As Countrywide points out, and the Hawthornes apparently concede,[2] "[t]he Hawthornes have essentially staked their entire case against Countrywide on the premise that American Mortgage's breach of contract and misrepresentations are attributable to Countrywide because American Mortgage was Countrywide's agent."  Countrywide's Brf.

---

[2]    In support of their breach of contract claim, the Hawthornes point only to the Mortgage Loan Origination Agreement between the Hawthornes and American Mortgage.  See Pl.'s Response at 21.  Moreover, in support of their claims of fraud, negligent misrepresentation, and violations of the UTPCPL, the Hawthornes point only to conduct by Countrywide "through its agent American Mortgage," not conduct by Countrywide itself.  See id. at 22, 26.

at 11.  Because the Court determines that there is no genuine
issue of material fact that American Mortgage was not acting as
Countrywide's agent in its role as mortgage broker for the
Hawthornes, none of American Mortgage's conduct can be attributed
to Countrywide.

    A.   <u>Agency Generally</u>

Under Pennsylvania law,[3] because the Hawthornes are
asserting an agency relationship, they have "the burden of
proving it by a fair preponderance of the evidence." <u>Volunteer
Fire Co. of New Buffalo v. Hilltop Oil Co.</u>, 602 A.2d 1348, 1351
(Pa. Super. Ct. 1992). "The basic elements of agency are 'the
manifestation by the principal that the agent shall act for him,
the agent's acceptance of the undertaking and the understanding
of the parties that the principal is to be in control of the
undertaking.'" <u>Scott v. Purcell</u>, 415 A.2d 56, 60 (Pa. 1980)
(quoting the Restatement (Second) of Agency § 1, Comment b
(1958)).

As evidence of an agency relationship, the Hawthornes
point to four facts.  First, Countrywide provides American
Mortgage access to its internal proprietary software, eApproveTM.
Second, Countrywide left all communications to be made with

_____

[3]    All the parties concede that Pennsylvania law applies
to the claims in this case.

borrowers with American Mortgage and other brokers.  Third, American Mortgage was a correspondent bank that could close mortgages itself and then subsequently place those loans with Countrywide.  Fourth, Countrywide on occasion referred to American Mortgage as its "partner."  See Pl.'s Response at 16-17. These four pieces of evidence, when scrutinized singly or jointly, do not add up to an agency relationhsip.

First, the eApproveTM system does not constitute evidence of an agency relationship.  Countrywide's corporate representative Steve Gatter explained that eApproveTM is merely a tool that allows a broker to analyze, based on hypothetical facts, whether Countrywide would approve funding to a hypothetical borrower.  The eApproveTM system itself states that the approval it provides "is based on the accuracy of the data that [the broker] provided" and that final approval is "subject to receipt of a loan application, further review and branch verification."  This contention went unchallenged by the Hawthornes.

Second, Countrywide's policy of relying on brokers to communicate with borrowers does not make those brokers Countrywide's agents.  The Hawthornes cite no authority to the contrary.

Third, American Mortgage's status as a "correspondent bank" is not indicia of an agency relationship.  Gatter testified

that a correspondent bank has "the financial wherewithal to be able to fund [its] own loans, then after that loan is closed [it] can do what [it] want[s] with it, but basically [it] operate[s] as an individual entity."  Gatter Dep. at 55.  Countrywide sometimes buys already-closed loans from its correspondent banks but those loans are still subject to Countrywide's conditions. Id.  In fact, American Mortgage's status as a correspondent bank shows that it was independent from Countrywide--not controlled by it--and thus was not its agent.

Finally, Countrywide's occasional use of the word "partner" when referring to American Mortgage is unavailing. There is no evidence on the record that American Mortgage and Countrywide were "partners" in any legal sense of that term.

On the other hand, Countrywide provides convincing evidence that no agency relationship existed between it and American Mortgage.  In particular, Countrywide's Broker Agreement with American Mortgage specifically states that:

> [Countrywide] and Broker acknowledge that at all times they are operating as independent parties.  Nothing contained herein shall constitute a partnership or joint venture between [Countrywide] and Broker.  Broker is not, and Broker cannot hold itself out to be, [Countrywide's] agent, employee or contractor.  Broker shall not commit [Countrywide] to do anything or to take any action without the prior written approval of [Countrywide].

Broker Agreement at ¶ 7.  The Broker Agreement also provides that American Mortgage was not obligated to submit all loan funding

requests that it brokers to Countrywide, "it being understood that this shall be a non-exclusive agreement." Id. at ¶ 1. Moreover, Gatter confirmed at his deposition that the Broker Agreement accurately represented the nature of the relationship between Countrywide and American Mortgage.

On these facts, the Hawthornes have created no genuine issue of material fact that American Mortgage was not acting as Commonwealth's agent. This finding is in accord with the decisions of other courts faced with similar circumstances. See, e.g., Mills v. Equicredit Corp., 344 F. Supp. 2d 1071, 1078 (D. Mich. 2004) (granting summary judgment in favor of mortgage lender because plaintiff failed to show mortgage broker was lender's agent because, inter alia, the agreement between the lender and broker expressly stated that the broker was not an agent of the lender).


B.   Apparent Authority

The closer question is whether American Mortgage exercised apparent authority to bind Countrywide to a contract with the Hawthornes. See Pl.'s Response at 18-19. Apparent authority is the "power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted," for instance where "the principal knowingly permits the agent to exercise such power

or if the principal holds the agent out as possessing such power."  Revere Press, Inc. v. Blumberg, 246 A.2d 407, 410 (Pa. 1968).

There appear to be no Pennsylvania decision discussing agency in the context of a mortgage brokerage relationship.  The Hawthornes point this Court instead to the well-litigated question of when, if ever, an insurance broker is the agent of the insurer whose policy it sells.  This analogy of mortgage broker cases to insurance broker cases, while conceptually instructive, does not help the Hawthornes in this case.

The general rule for insurance cases is that the broker is the agent of the insured who purchases insurance, not the agent of the insurer who issues it:

> Where a person desiring to have his property insured applies not to any particular company or its known agent, but to an insurance broker, permitting him to choose which company shall become the insurer, a long line of decisions has declared the broker to be the agent of the insured; not of the insurer.

Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 Fed. Appx. 519, 523 n.4 (3d Cir. 2006) (quoting Taylor et al. v. Crowe, 282 A.2d 682, 683 (Pa. 1971) (quoting Taylor v. Liverpool & L & G Ins. Co., 68 Pa. Superior Ct. 302, 304 (1917)).[4]

---

[4]     Pennsylvania law is consistent with the Restatement: "A person who conducts a transaction between two others may be an agent of both of them in the transaction, or the agent of one of them only, although the agent of the other for other

Here, it is undisputed that American Mortgage was free to shop Mr. Hawthorne's loan application, just as an insurance broker is free to shop an insured's application to different insurers.  American Mortgage explained its independent status to the Hawthornes in the Mortgage Loan Origination Agreement: "We [American Mortgage] have entered into separate independent contractor agreements with various lenders."  Mortgage Loan Agreement at § 1.  Thus, if mortgage brokers are like insurance brokers, as the Hawthornes suggest, they are the agents of the mortgagors and not the mortgagees.

The Hawthornes citation to <u>Triage, Inc. v. Prime Ins. Synd., Inc.</u> is also unavailing.  887 A.2d 303, 304 (Pa. Super. Ct. 2005).  In that case, the plaintiff sought a refund of unearned premiums from both an insurance company and the insurance broker to whom it had remitted the premium payments. The insurer refunded the amounts it actually received but argued it should not be compelled to return amounts retained by the insurance broker, because no agency relationship existed between the insurer and the broker.  Recognizing that apparent authority ordinarily exists only where a principal somehow creates an

---

transactions, or the agent of the for part of the transaction and the agent of the other for the remainder."  Restat. 2d of Agency, § 14L.  "An insurance broker, for instance, is the agent of the insured when selecting and negotiating with the insurer, but is normally paid by and may become the agent of the insurer for the delivery of the policy."  <u>Id.</u> at Reporter's Notes.

appearance of authority, the Court held:

> The requisite indicia of agency need not, however, be
> especially overt, as the broker's mere placement of the
> policy and collection of premium may suffice.  <u>See</u>
> <u>Sands v. Granite Mut. Ins. Co.</u>, 232 Pa. Super. 70, 331
> A. 2d 711, 716 (Pa. Super. 1974) (quoting <u>Thomas v.</u>
> <u>Western Ins. Co.</u>, 5 Pa. Super. 383, 389 (1897)) ("It
> requires no extended discussion or citation of
> authorities to establish the proposition that a person
> authorized to deliver a policy of insurance and receive
> and receipt [sic] for the premiums is the agent of the
> company for that purpose, and the payment of the
> premium to him is a good payment.").  . . .  By
> allowing collection of premiums and delivery of the
> policy by the designated broker, the insurer had
> engaged in affirmative acts consistent with an
> agency relationship and therefore is sufficient to
> create one.

<u>Id.</u> at 307-08 (internal citation omitted).  The Court stated that

this principle applied "even in the face of contractual language

that, as here, attempted to deny any agency relationship."  <u>Id.</u>

> <u>Triage</u> is distinguishable in that the Hawthornes have

not shown that American Mortgage collected premiums on

Countrywide's behalf.[5]  In the absence of a collection of

_____

[5]     Even if American Mortgage collected payments on
Commonwealth's behalf, the scope of the authority thereby created
would be limited to the function of collecting payments and would
not include the authority to enter into agreements on
Countrywide's behalf.  <u>See</u> <u>Rich Maid Kitchens, Inc. v.</u>
<u>Pennsylvania Lumbermens Mut. Ins. Co.</u>, 641 F. Supp. 297, 305
(E.D. Pa. 1986) ("At most, one could argue that [the broker] was
an agent for [the insurer] in his function of collecting premiums
from [the insured]. But, this would have no effect on his status
as an agent of [the insured] in procuring the insurance
policy.").

        The Restatement  (Second) of Agency also makes clear
that Countrywide's authorizing American Mortgage to solicit
business on its behalf does not, by itself, provide American

premiums, there is "no affirmative act" in this case which is consistent with an agency relationship.  Nor have they shown that American Mortgage acted in any other way for Countrywide's benefit.[6]

C.   <u>Other Agency Theories</u>

The Hawthornes also advance the theories of agency by estoppel and agency by ratification.  Neither of these theories has application to this case.  Countrywide never took any action that would cause the Hawthornes to believe that American Mortgage had the authority to approve loans on Countrywide's behalf; thus, it will not be estopped from contending that American Mortgage had no such authority.  <u>See</u> <u>Jones v. Van Norman</u>, 522 A.2d 503, 511 (Pa. 1987).  Countrywide certainly never ratified anything, as the Hawthornes suggest, through its eApproveTM system.  The

---

Mortgage the authority to bind Countrywide to a contract: "Authority to contract is not inferred from authority to solicit business for the principal nor from authority to perform acts of service for the principal."  Restat 2d of Agency, § 50, comment b.  By way of illustration: "P employs A, a real estate broker, to find a purchaser for Blackacre, at a stated price. A has no authority to contract for its sale."  <u>Id.</u>

[6]   This is also a factor discussed by the Restatement in the brokerage context: "One who receives goods from another for resale to a third person is not thereby the other's agent in the transaction: whether he is an agent for this purpose or is himself a buyer depends upon whether the parties agree that his duty is to act primarily for the benefit of the one delivering the goods to him or is to act primarily for his own benefit." Restat. 2d of Agency, § 14J.

eApprove notice explicitly states that final Countrywide's final approval was "subject to receipt of a loan application, further review and branch verification."[7]

D.   Conclusion

For the reasons discussed above, the Countrywide's motion for summary judgment will be granted and judgment entered in its favor.[8]

## III. THE HAWTHORNES' MOTION FOR PARTIAL SUMMARY JUDGMENT

The Hawthornes also move for summary judgment against

_____

[7]   The Hawthornes devote a significant portion of their briefing to arguing that Countrywide's motion should be denied based on alleged misleading redactions to Exhibit 11 of its motion.  Specifically, Countrywide redacted the underlined portion of an underwriting document it attached as an exhibit to its motion, as follows:

> General: Credit is rated QUESTIONABLE because the qualifying credit score of all owners (609) is less than the qualifying credit score of 620 for all LTV > 70.00.  This loan cannot be approved by CLUES and needs further review of an underwriter to ensure acceptable credit risk.

This argument can be dismissed.  The redacted language only further hurts the Hawthornes' case.  Countrywide has explained that some of the redactions were made at the Hawthornes' request and that others were inadvertent.  Countrywide has submitted unredacted copies of Exhibit 11.

[8]   Because the Court will dismiss all claims against Countrywide, it need not address Countrywide's remaining two arguments: (1) that the Hawthornes' tort claims should be barred by the gist of the action doctrine; and (2)that the Hawthornes have not shown any damages.

-15-

American Mortgage.  Their motion will be denied.  There still remain genuine issues of material fact as to (1) whether American Mortgage breached its agreement with the Hawthornes (2) whether the Hawthornes justifiably relied on American Mortgage's assurances that it was prepared to provide financing to purchase the home.

### A.   American Mortgage's Alleged Discovery Failure

The Hawthornes first argue that summary judgment against American Mortgage is appropriate because of its failure to participate in discovery.  Those failures include the failure to provide timely or adequate initial disclosures pursuant to Federal Rule of Civil Procedure 26, the failure to respond to the Hawthornes' interrogatories and document requests, the failure to produce a corporate designee for a deposition, and the failure to attend a single deposition taken during the litigation.

In Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863, 868 (3d Cir. 1984), the Third Circuit examined the factors that must be considered when ordering such an extreme discovery sanction as the Hawthornes request.  Those factors include: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the

attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.  Id.

Here, the Hawthornes have not even attempted to make out the showing required under Poulis, and cite no other caselaw suggesting that summary judgment is appropriate under these circumstances.  The appropriate time and means to remedy American Mortgage's alleged discovery failures was prior to the close of discovery through a motion to compel.  The Hawthornes never filed such a motion or sought the assistance of the Court in compelling responses by American Mortgage to their requests.  See Fed. R. Civ. P. 37(a) & (b).

### B.   Breach of Contract

The Hawthornes also argue that there is no genuine issue of material fact as to whether American Mortgage breached its contract to provide financing to the Hawthornes.

The Hawthornes point to the testimony of Bethann Whener, the former American Mortgage officer who handled the Hawthornes' loan application.  Ms. Whener opined that American Mortgage was to blame for the closing not occurring.  Whener Dep. at 45-46.  She testified that the Hawthornes did not do anything wrong and did not do anything to jeopardize the transaction.  Id.

at 46.  She also confirmed that the Hawthornes qualified for a mortgage and that she had represented to the Hawthornes that the closing would occur on time.  Id. at 36.

Ms. Whener also explained that she believed the loan did not close because American Mortgage had "drug their feet (sic)" in processing the application.  Id. at 45-46.  She elaborated that the American Mortgage Branch Manager was "more worried about his fantasy football team than he was about this deal."  Id.  She testified that on many days she would come into the office and confront her Branch Manager about being more engrossed in his fantasy football pool than processing the Hawthornes' loan, especially when there was another offer in cash waiting in the wings.  She testified that his typical response was " yeah, right, they have another offer, yeah, there's cash, that's what they all say."  Id. at 47-48.

American Mortgage on the other hand, points out that the August 29, 2004 written approval that the Hawthornes received was "conditional," and two American Mortgage's officers have affied that the Hawthornes did not satisfy the conditions set forth in that approval.  Specifically, the Hawthornes failed to verify their income by failing to produce a full copy of their 2003 tax returns.  They also failed to meet Countrywide's underwriting conditions, which was a condition of American Mortgage's August 29, 2004 approval.

Genuine issues of material fact as to whether American Mortgage breached its contract still remain that can only be resolved by a jury.  There is contradictory testimony from American Mortgage's own officers and former officers as to whether the Hawthornes satisfied all of the conditions necessary for American Mortgage to proceed to closing.  There is also contradictory evidence as to whether American Mortgage was obligated to provide financing by the date of closing after informing the Hawthornes that they qualified for a mortgage, and, if it did have such an obligation, whether or not it discharged it appropriately.

C.   Fraud, UTPCPL, and Negligent Misrepresentation

The Hawthornes' claims for fraud, violations of the UTPCPL, and negligent misrepresentation are based on Ms. Whener's representations that American Mortgage would be able to provide financing at the scheduled closing.  Each of those claims requires proof of "justifiable reliance" on Ms. Whener's representations.  See Gibbs v. Ernst, 647 A.2d 882, 889-890 (Pa. 1994) ("justifiable reliance" required for fraud); Booze v. Allstate, 750 A2d 877, 880 (Pa. Super. 2000) ("justifiable reliance" required for UTPCPL); Bortz v. Noon, 729 A.2d 555, 562 (Pa. 1999) ("justifiable reliance" required for negligent misrepresentation).

In this regard, American Mortgage brings to the Court's attention an acknowledgment signed by Mr. Hawthorne which specifically states that American Mortgage "will be bound to me/us only by written commitment and that I/we the applicants may not rely on non-written loan approval and/or verbal status reports."  Amer. Mort.'s Resp. at 3 (emphasis added).  American Mortgage never provided such a written commitment to the Hawthornes.  Moreover, less than a week before closing, American Mortgage was still requesting tax returns and additional financial information from the Hawthornes' accountant.  Indeed, the Hawthornes' accountant was still sending financial information to American Mortgage just two days before closing.

Under these circumstances, there is a genuine issue of material fact as to whether the Hawthornes justifiably relied on Ms. Whener's representations that American Mortgage would provide financing at the closing.  The Hawthornes have not met their burden of showing that they are entitled to summary judgment in their favor on the counts for fraud, violations of the UTPCPL, and negligent misrepresentation.

## III. CONCLUSION

For the reasons set forth above, Countrywide's motion for summary judgment will be granted, and the Hawethornes' motion for partial summary judgment will be denied.

-20-

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JUDSON E. HAWTHORNE and      :      CIVIL ACTION
STACYE HAWTHORNE             :      NO. 05-5435
                             :
        Plaintiffs,          :
                             :
     v.                      :
                             :
AMERICAN MORTGAGE, INC, and  :
COUNTRYWIDE HOME LOANS, INC. :
                             :
        Defendants.          :

**O R D E R**

**AND NOW**, this **25th day of May, 2007,** it is hereby

**ORDERED** that defendant Countrywide Home Loans, Inc.'s Motion for

Summary Judgment (doc. no. 15) as to Plaintiffs is **GRANTED.**

It is **FURTHER ORDERED** that Plaintiffs' Motion for

Partial Summary Judgment (doc. no. 16) as to defendant American

Mortgage, Inc. is **DENIED.**

It is **FURTHER ORDERED** that the Motion for Leave to File

Reply Memorandum of Law in Further Support of Motion for Summary

Judgment (doc. no. 22) is **DENIED as moot.**

**AND IT IS SO ORDERED.**


 **S/Eduardo C. Robreno**
 **EDUARDO C. ROBRENO, J.**

-22-